IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TRANS-AUDIT, INC.,

    Plaintiff,

v.                                      CASE NO.  1:22cv318-RH-MAF

CONDATA GLOBAL, INC. et al,

    Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT IN PART

The parties to this commercial dispute have filed cross-motions for summary judgment. This order grants summary judgment for the plaintiff in part and otherwise denies the motions.

**I. Background**

The plaintiff Trans-Audit, Inc. is engaged in the business of recovering for clients amounts they overpaid for shipping services. This is sometimes referred to as "post-audit," as distinguished from evaluating anticipated shipping expenses in advance, sometimes referred to as "pre-audit."

Trans-Audit hired the defendant Kristy Bishop as its director of sales and marketing. Ms. Bishop had experience in the pre-audit business, but little or none in post-audit. Ms. Bishop's employment agreement included three restrictive covenants of importance here. First, she agreed not to use and not to disclose to a third party Trans-Audit's confidential information, broadly defined. Second, during the contract's term and for two years after its termination, she agreed not to "engage in a business that is similar to Trans Audit's," defined to mean post-audit, not pre-audit. Third, for the same period, she agreed not to "solicit Trans Audit's Clients, prospects or staff."

The defendant ConData Global, Inc. is Trans-Audit's primary competitor. ConData knew of Ms. Bishop's noncompete agreement but hired her anyway, in essentially the same role she performed for Trans-Audit. After giving notice to Trans-Audit that she was leaving, but before she left or told Trans-Audit where she was going, Ms. Bishop assisted ConData in developing a website and perhaps in other respects. A jury could also find—although Ms. Bishop denies—that after joining ConData, she used Trans-Audit's confidential information and trade secrets to assist in soliciting clients for ConData, including some who were former or existing Trans-Audit clients and some who were Trans-Audit prospects. Unassailable documentary evidence establishes that on the day before Ms. Bishop

left Trans-Audit, she forwarded Trans-Audit confidential information to her personal email account.

Trans-Audit initiated this action by filing a complaint against ConData. Trans-Audit asserted five claims: misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. (count 1); misappropriation of trade secrets in violation of the Florida Uniform Trade Secrets Act, Florida Statutes § 688.001 (count 2); tortious interference with a contractual relationship (count 3); tortious interference with a business relationship (count 4); and aiding and abetting Ms. Bishop's breach of her duty of loyalty (count 5).

Ms. Bishop intervened as a defendant, admitted her former employment with Trans-Audit and new employment with ConData, and denied almost everything else. She asserted a counterclaim for a declaratory judgment that her Trans-Audit employment agreement's noncompete and non-solicitation provisions were invalid (count 1) and that she did not breach them (count 2).

In response, Trans-Audit asserted claims against Ms. Bishop for breach of contract (counts 1 and 2), misappropriation of trade secrets (counts 3 and 4), and breach of duty of loyalty (count 5).

Trans-Audit has moved for summary judgment on liability. The defendants have filed a joint motion for summary judgment across the board. On each motion,

disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of the nonmoving party. The moving party must show that, when the facts are so viewed, the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary-judgment motion cannot be used to resolve in the moving party's favor a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

## II. Merits

This record presents a genuine factual dispute precluding summary judgment except in four respects.

### A. Validity of the Covenants

Florida law recognizes the validity of restrictive covenants in employment agreements protecting one or more "legitimate business interests." Fla. Stat. § 542.335(1)(b). That term is defined to include trade secrets, other "valuable confidential business or professional information," and "substantial relationships" with "specific prospective or existing" clients. *Id*. § 542.335(1)(b)1.–3. The record establishes, without genuine dispute, that Trans-Audit had legitimate business interests justifying the employment agreement's restrictions on Ms. Bishop's use of confidential information, whether or not a trade secret, and solicitation of clients

or prospects. *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1233–34 (11th Cir. 2009) (upholding a covenant based on an employee's access to confidential information on pricing, methodology for providing services, products, tools, and offerings); *see also Atomic Tattoos v. Morgan*, 45 So. 3d 63, 65 (Fla. 2d DCA 2010).

Trans-Audit is entitled to summary judgment on the validity of the covenants restricting Ms. Bishop's use of confidential information and solicitation of clients or prospects. Neither side's summary-judgment papers explicitly address, and summary judgment is not granted, on the validity of the covenant precluding Ms. Bishop from being employed by ConData at all. *See, e.g.*, Trans-Audit's Mot. for Summ. J., ECF No. 70 at 39–40 (identifying the breaches of the agreement as using and disclosing confidential information and soliciting customers).

### B. First Breach

Ms. Bishop's fifth affirmative defense asserts Trans-Audit breached Ms. Bishop's employment agreement by unilaterally altering her compensation formula and that, because of this breach, the contract was no longer binding on Ms. Bishop. But both Trans-Audit and Ms. Bishop continued to perform under the agreement after the formula was changed. When a party breaches a contract in a manner that would allow the other party to terminate the contract, but the other party chooses

instead to continue to perform under the contract, the contract remains in force. A leading authority has explained in this way:

> A party to a contract may waive a condition precedent to its performance, *or a breach of the contract's provisions*, by conduct manifesting a continued recognition of the contract's existence after learning of the breach or failure of the condition, such as by continuing to perform or accepting performance under the contract and receiving the benefit of it.

13 *Williston on Contracts* § 39:31 (4th ed.) (emphasis added).

Courts in Florida have recognized this principle. *See Oelrich Constr., Inc. v. PRC Precast, LLC*, No. 22-10305, 2023 WL 4534129 (11th Cir. July 13, 2023), *aff'g*, No. 1:20-cv-169-RH (N.D. Fla. Nov. 10, 2021); *MDS (Canada), Inc. v. Rad Source Tech., Inc.*, 720 F.3d 833, 851–52 (11th Cir. 2013); *Acosta v. Dist. Bd. of Trs. of Miami Dade Comm. Coll.*, 905 So. 2d 226, 229 (Fla. 3d DCA 2005).

Having chosen to proceed with the contract, Ms. Bishop was obligated to perform according to its terms. Trans-Audit is entitled to summary judgment on Ms. Bishop's fifth affirmative defense.

### C. Illusory Contract

Ms. Bishop's sixth affirmative defense asserts Ms. Bishop's employment agreement was illusory because, she says, the agreement gave Trans-Audit unlimited authority to modify its terms. Ms. Bishop invokes this settled principle: "Where one party retains to itself the option of fulfilling or declining to fulfill its

obligations under the contract, there is no valid contract and neither side may be bound." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984).

The principle does not apply here for three reasons.

First, Ms. Bishop's employment agreement limited Trans-Audit's modification authority, if only a little. The agreement said Trans-Audit could modify the agreement "as necessary to support its business objectives or special circumstances." Trans-Audit could not simply refuse to perform under the agreement, and Trans-Audit could not modify the agreement's terms except "as necessary" to support its business objectives or in special circumstances.

Second, even when a contract lacks mutuality at the outset, the defect may be cured by the parties' subsequent conduct, including their performance under the contract. *See Flagship Resort Dev. Corp. v. Interval Int'l, Inc.*, 28 So. 3d 915, 922 (Fla. 3d DCA 2010) (Lagoa, J.) ("Even assuming a lack of mutuality of obligation at the inception of the contract, 'such defect may be cured by subsequent conduct of the parties.' ") (quoting *Wright & Seaton, Inc. v. Prescott*, 420 So. 2d 623, 627 (Fla. 4th DCA 1982)); *see also* 11 Fla. Jur. 2d *Contracts* § 93. Indeed, *Wright* applied this principle in upholding a restrictive covenant against a lack-of-mutuality defense. Here, both sides performed under the employment agreement

for four years, thus defeating even any otherwise-well-founded lack-of-mutuality defense.

Third, even if the modification provision were deemed to render the agreement illusory, the provision would properly be severed, leaving intact the rest of the agreement. In *Frankenmuth Mutual Insurance Co. v. Escambia County*, 289 F.3d 723 (11th Cir. 2002), the court applied Florida law and thus looked to "the entirety of the agreement." *Id*. at 728. The court said an offending provision should be severed when it does not go to the "essence" of the contract and when, with the offending provision eliminated, "there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." *Id*. That is the situation here. The agreement does not include an explicit severability clause, but such a clause is not necessary. *See Hochbaum ex rel. Hochbaum v. Palm Garden of Winter Haven, LLC*, 201 So. 3d 218, 221–22 (Fla. 2d DCA 2016); *J.R.D. Mgmt. Corp. v. Dulin*, 883 So. 2d 314, 316 (Fla. 4th DCA 2004).

Trans-Audit is entitled to summary judgment on Ms. Bishop's sixth affirmative defense.

### D. Breach of Duty of Loyalty

Other than as set out above, Trans-Audit's claims turn on genuine disputes of material fact, with one exception. It is undisputed that, while still employed at Trans-Audit, Ms. Bishop assisted ConData in developing a website promoting ConData's business, contrary to Trans-Audit's interests. This violated Ms. Bishop's duty of loyalty. Trans-Audit asserts Ms. Bishop also breached her duty of loyalty in other respects—respects that are genuinely disputed. So at most, Trans-Audit could obtain summary judgment on only *part* of the duty-of-loyalty claim, leaving for the jury other liability issues on this claim.

If partial summary judgment were granted, it would change the evidence at trial not at all. The same witnesses would testify; the same exhibits would be admitted. There would be a substantial risk of undue prejudice to the defendants— prejudice I would attempt to avoid by precluding or at least minimizing mention of the partial summary judgment. The opening statements and closing arguments would change little, if any; even without a partial summary judgment, the defense attorneys are unlikely to assert with much vigor, if at all, that Ms. Bishop acted properly in assisting ConData while still employed by Trans-Audit. If necessary, the jury instructions can settle the issue.

"[E]ven in the absence of a factual dispute, a district court has the power to deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001) (internal quotations omitted); s*ee also Marcus v. St. Paul Fire & Marine Ins. Co.*, 651 F.2d 379, 382 (5th Cir. 1981) (same). A court "retains some discretion to deny" a motion when the court "has any doubt as to the wisdom of terminating the action prior to a full trial." 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2728. The discretion should rarely be exercised but is greater when the issue involves only one part of one claim in an action that will go to trial on other issues anyway.

As a matter of discretion, I choose not to grant partial summary judgment on the part of the duty-of-loyalty claim on which the record establishes, beyond genuine dispute, that Trans-Audit is entitled to prevail. This will avoid undue prejudice to the defendants and otherwise will affect the trial not at all. Appropriate jury instructions will ensure that this decision makes no substantive difference in the trial's outcome.

### III.  Conclusion

For these reasons,

IT IS ORDERED:

1. The defendants' summary-judgment motion, ECF No. 67, is denied.

2. Trans-Audit's summary-judgment motion, ECF No. 70, is granted in part and denied in part.

3. Summary judgment is granted for Trans-Audit on the validity of the covenants restricting Ms. Bishop's use of confidential information and solicitation of clients or prospects.

4. Summary judgment is granted for Trans-Audit on Ms. Bishop's fifth and sixth affirmative defenses.

5. Summary judgment is denied in all other respects.

SO ORDERED on February 13, 2024.

                                              s/Robert L. Hinkle
                                              United States District Judge